IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD P. HASE, JR.,                    6:15-CV-01314-BR

       Plaintiff,                   OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

       Defendant.


**ALAN STUART GRAF**
208 Pine Street
Floyd, VA 24091
(540) 745-2519

       Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**ALEXIS L. TOMA**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-2950

       Attorneys for Defendant


**BROWN, Judge.**

       Plaintiff Ronald P. Hase, Jr., seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

       For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.


## ADMINISTRATIVE HISTORY

       Plaintiff filed an application for DIB on September 19, 2011, alleging a disability onset date of March 3, 2010. Tr. 147.[1]  The application was denied initially and on

---

     [1] Citations to the official transcript of record filed by the Commissioner on December 29, 2015, are referred to as "Tr."

2 - OPINION AND ORDER

reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on February 18, 2014.  Tr. 34-61.  At the hearing
Plaintiff was represented by a "non-attorney representative."
Plaintiff and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on March 21, 2014, in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 16-29.  Pursuant to 20 C.F.R. § 404.984(d),
that decision became the final decision of the Commissioner on
May 13, 2015, when the Appeals Council denied Plaintiff's request
for review.  Tr. 8-11.  *See Sims v. Apfel*, 530 U.S. 103, 106-07
(2000).


## BACKGROUND

Plaintiff was born August 17, 1974, and was 38 years old at
the time of the hearing.  Tr. 126.  Plaintiff completed high
school.  Tr. 160.  Plaintiff has past relevant work experience as
a maintenance assistant.  Tr. 23.

Plaintiff alleges disability due to migraine headaches,
right-shoulder issues, and knee and back pain.  Tr. 81.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 20-22.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also
Keyser*, 648 F.3d at 724-25. Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform. *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2. If the Commissioner meets this burden, the claimant
is not disabled. 20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since his March 31, 2010, alleged
onset date. Tr. 18. The ALJ noted Plaintiff testified at the
hearing that he operated a farm until November 2011, "but [he]
characterized it as a hobby farm rather than a business venture.

[Plaintiff's] earnings record shows $10,944.00 for 2010, which supports his contention that he stopped working at the end of March 2010."  Tr. 18.

At Step Two the ALJ found Plaintiff has the severe impairments of lumbar degenerative disk disease, carpal-tunnel syndrome, left-hip degenerative joint disease, and obesity. Tr. 18.  The ALJ found Plaintiff's impairment of depression is nonsevere.  Tr. 20.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 22.  The ALJ found Plaintiff has the RFC to perform sedentary work with only occasional handling, fingering, and feeling.  Tr. 22.

At Step Four the ALJ found Plaintiff cannot perform his past relevant work.  Tr. 27.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy.  Tr. 27. Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) found at Step Two that Plaintiff's depression was nonsevere; (2) found at Step Three that Plaintiff's impairments did not meet or equal one of

8 - OPINION AND ORDER

the listed impairments; (3) improperly rejected Plaintiff's
testimony; and (4) improperly weighed the opinions of Gregory
Falk, D.O., Plaintiff's treating physician.

**I.    The ALJ did not err at Step Two.**

Plaintiff asserts the ALJ erred at Step Two when he failed
to consider the combined effects of all of Plaintiff's
impairments, including depression.

At Step Two the claimant is not disabled if the Commissioner
determines the claimant does not have any medically severe
impairment or combination of impairments. *Stout*, 454 F.3d at
1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A
severe impairment "significantly limits" a claimant's "physical
or mental ability to do basic work activities." 20 C.F.R.
§ 404.1521(a). *See also Ukolov*, 420 F.3d at 1003. The ability
to do basic work activities is defined as "the abilities and
aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a),
(b). Such abilities and aptitudes include walking, standing,
sitting, lifting, pushing, pulling, reaching, carrying, handling,
seeing, hearing, speaking; understanding, carrying out, and
remembering simple instructions; using judgment; responding
appropriately to supervision, co-workers, and usual work
situations; and dealing with changes in a routine work setting.
*Id.*

At Step Two the ALJ found with respect to Plaintiff's

impairment of depression that

> the medical records do not establish that
> depression limited the claimant's functioning for
> 12 consecutive months and I find it is not a
> severe impairment.  In the alternative, I find
> that claimant's medically determinable mental
> impairment of depression does not cause more than
> minimal limitations in his ability to perform
> basic mental work activities and is therefore
> nonsevere.

Tr. 20.

     Plaintiff asserts the jobs the ALJ found Plaintiff could

perform in the national economy "involved a certain level of

mental ability to focus," and "[a] depressed person with chronic

pain may not be able to sustain such requirements."  Plaintiff,

however, does not point to any evidence in the record that any

medical professional opined Plaintiff was unable to concentrate

or to focus.  In fact, the ALJ noted the record contains numerous

references to records in which Plaintiff was found to have normal

attention span and concentration.  Tr. 21, 404, 406, 408, 423,

434, 439, 443.  Plaintiff, therefore, has not established the ALJ

erred at Step Two when he failed to consider the combined effects

of Plaintiff's impairments.

     In addition, the Ninth Circuit has held when the ALJ has

resolved Step Two in a claimant's favor, any error in designating

specific impairments as severe does not prejudice a claimant at

Step Two.  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)

(any error in omitting an impairment from the severe impairments

identified at Step Two was harmless when Step Two was resolved in
claimant's favor). Because the ALJ resolved Step Two in
Plaintiff's favor, the Court concludes any error by the ALJ in
failing to identify depression as severe is harmless.

**II.  The ALJ did not err at Step Three.**

At Step Three the Commissioner must determine whether a
claimant's impairments meet or equal one of the listed
impairments and are so severe that they preclude substantial
gainful activity. 20 C.F.R. § 416.920(a)(4)(iii).

Plaintiff alleges the ALJ erred at Step Three when he found
Plaintiff's impairments did not meet or medically equal Listing
1.04(A)(Disorders of the Spine).

Listing 1.04(A) provides a claimant meets the listing if he
meets the following criteria:

> **1.04 Disorders of the spine** (*e.g.*, herniated
> nucleus pulposus, spinal arachnoiditis, spinal
> stenosis, osteoarthritis, degenerative disc
> disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root . . . or
> the spinal cord.  With:
>
> A. Evidence of nerve root compression
> characterized by neuro-anatomic distribution of
> pain, limitation of motion of the spine, motor
> loss (atrophy with associated muscle weakness or
> muscle weakness) accompanied by sensory or reflex
> loss and, if there is involvement of the lower
> back, positive straight-leg raising test (sitting
> and supine).

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.04(A).  It is
undisputed that Plaintiff has at least one herniated disk.

11 - OPINION AND ORDER

Plaintiff notes a straight-leg raising test administered by Dr. Falk on April 15, 2010, in which Plaintiff had "positive results."  Tr. 346.  Plaintiff, however, does not point to any evidence in the record that shows Plaintiff suffered "motor loss (atrophy with associated muscle weakness or muscle weakness)." In fact, as the ALJ noted, the record contains numerous references to Plaintiff's normal upper and lower extremity strength without atrophy.  Tr. 22, 298, 302, 306, 311, 391.

The Ninth Circuit has held a court cannot conclude an ALJ's analysis as to a listing is erroneous when a claimant does not proffer any plausible theory as to how his impairments satisfy the specific criteria of the listing.  *See, e.g., Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

On this record the Court concludes the ALJ did not err at Step Three because he provided legally sufficient reasons supported by substantial evidence on the record to support his findings.

## III. The ALJ erred when he partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence

12 - OPINION AND ORDER

of an impairment or impairments, and he must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th
Cir. 1986).  The claimant, however, need not produce objective
medical evidence of the actual symptoms or their severity.
*Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if she provides clear and
convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th
Cir. 1995)).  General assertions that the claimant's testimony is
not credible are insufficient.  *Id*.  The ALJ must identify "what
testimony is not credible and what evidence undermines the
claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified he had undergone two back
surgeries without success.  Plaintiff testified he has "pains
going down [his left] leg" and suffers severe carpal-tunnel
syndrome in both of his wrists.  Tr. 42, 47.  Plaintiff noted his
hands "go to sleep a lot and they tingle and burn" due to his
carpal-tunnel syndrome.  Tr. 47.  Plaintiff testified he had
owned and operated a 24-acre hobby farm until November 2011 when
he and his wife divorced and she sold the farm.  Plaintiff stated
he tended cows, goats, sheet, chickens, and geese until his wife

sold the farm.  Plaintiff noted he had problems with his back,
legs, and hands while he was working on the farm, but he "had a
guy from town that [he] hired occasionally [who] would come out
and do" some of the physical labor such as digging post holes,
chopping firewood, and bringing in the hay.  Tr. 41.  Plaintiff
also received assistance from his teenage daughter.  Plaintiff
testified he moved in with his parents in November 2011, and he
has been "very involved" in caring for his father, who has had
several strokes, is on dialysis, has bone disease, and cannot
walk.  The ALJ noted Plaintiff stated in his April 2012 Adult
Function Report that he goes fishing when he is able.  The
Plaintiff testified he had not been fishing "in a couple of
years," and he has not had a fishing license for two years.  The
ALJ also noted Plaintiff's earnings reports from 2008 and 2009
reflect $33,600 and $37,600 in income for those years even though
he underwent back surgery and was suffering serious back problems
at the time.  When the ALJ asked Plaintiff how he was able to
earn that amount of income with his serious back problems,
Plaintiff responded he was working at his wife's insurance agency
in 2008 and 2009, and, as a result, he was paid whether "he went
into work or not" so there "was income coming into the household
. . . [that] would benefit the household."  Tr. 45-46.  Plaintiff
testified doing his daily chores is often enough to cause his
pain level to go "well over a five" out of ten on the pain scale,

and he has to lie down one to three times a day for 15-60 minutes.  Tr. 49.  Plaintiff stated he sweeps, mops, does dishes, and generally helps with household chores when he is able to do so.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible."  Tr. 23.  The ALJ noted Plaintiff "clearly has limitations arising from his back condition."  Tr. 23. Specifically, the ALJ noted Plaintiff has undergone two back surgeries and that an April 2011 MRI showed "severe narrowing of the left neural foramen at the L4-5 and L5-S1 levels with flattening of the left nerve roots at L4 and L5."  Tr. 23. Nevertheless, the ALJ found "the evidence does not support a finding that [Plaintiff's] back condition would prevent him from performing sedentary" work.  Tr. 23.

The ALJ found Plaintiff's activities of daily living indicated he has the capacity for sedentary exertional demands. For example, the ALJ noted Plaintiff worked on his 24-acre farm before November 2011 caring for animals and doing tasks such as working with hay, gardening, and doing "a fair amount" of heavy lifting.  The ALJ noted one record from April 2011 included a recommendation by an examining physician that Plaintiff undergo a

15 - OPINION AND ORDER

third back surgery "as he has to return back to some fairly heavy duty work involving lifting." Tr. 278.  After November 2011 Plaintiff lived with his parents on their five-acre farm and assisted his father, who is wheelchair bound.  Plaintiff, however, testified at the hearing and noted in his Adult Function Report that he helped his parents on their property sporadically and only as he was able.  Plaintiff stated he was able to do most household chores "when on med[ications] and go[ing] _slow_!" Tr. 187.  Plaintiff noted he likes to help his parents on their property as long as he can work at his own pace and rest when his back starts to hurt too much.

The ALJ also found the medical record supported a finding that Plaintiff is capable of performing sedentary work.  The ALJ noted numerous records throughout 2011 reflected Plaintiff has a normal gait and normal bilateral extremity strength and sensation.  The record, however, also reflects numerous records in which Plaintiff suffered severe back pain that caused him to be in discomfort and unable to sit or to stand for long periods. For example, during a June 2010 examination the doctor noted Plaintiff was "unable to remain still for entire exam" due to pain.  Tr. 357.  Throughout 2011 and 2012 Plaintiff's medical records reflect extreme back pain when Plaintiff is sitting or standing despite medication.  _See, e.g.,_ Tr. 328, 330, 279, 327, 331, 326, 311, 395, 428, 438.

16 - OPINION AND ORDER

The ALJ noted electrodiagnostic testing conducted on Plaintiff in May 2010 indicated Plaintiff has "severe carpal tunnel syndrome bilaterally." Tr. 373. The ALJ, however, found Plaintiff "has reportedly dealt with these symptoms for more than two decades," and an examination in June 2010 reflected Plaintiff "has no atrophy about his bilateral hands and thick callouses, consistent with heavy use of his hands." Tr. 391. The ALJ noted Plaintiff is able to button his shirts, tie his shoes, bathe and dress without assistance, use utensils, and lift a coin off of the table. Tr. 25. The ALJ also noted Plaintiff had declined to undergo carpal-tunnel releases, which were recommended by examining physician Michael Krnacik, M.D., in June 2010. The Ninth Circuit recently reiterated:

> Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. But here, as described, the daily activities, which included completing basic chores, sometimes with the help of a friend, and attending occasional social events, do not contradict Ghanim's testimony. Daily activities may also be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a substantial portion of Ghanim's day, or were transferrable to a work environment. See also *Smolen*, 80 F.3d at 1284 n. 7 (recognizing that "many home activities may not be easily transferrable to a work environment").

*Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Here the

record does not reflect the limited activities of daily living Plaintiff engages in comprise a substantial portion of his day or are transferrable to a work environment.  Plaintiff's completion of a few basic household chores done at his pace with frequent opportunities to rest does not establish he has the ability to perform work.

On this record the Court finds the ALJ did not provide clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony was not entirely credible as to the limiting effects of his impairments.  The Court, therefore, concludes the ALJ erred when he rejected Plaintiff's testimony in part.

## IV.    The ALJ erred when he did not give any weight to Dr. Falk's December 2012 opinion and only limited weight to his February 2014 opinion.

Plaintiff alleges the ALJ erred when he did not give any weight to the December 2012 of Dr. Falk, Plaintiff's treating physician, and only limited weight to his February 2014 opinion.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of a treating

18 - OPINION AND ORDER

physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32.

**A.   Dr. Falk's December 2012 opinion**

On December 21, 2012, Dr. Falk addressed a letter to the Social Security Administration regarding Plaintiff's medical conditions. Dr. Falk noted Plaintiff has "chronic low back pain with pain radiating down the left leg." Tr. 417. Dr. Flak opined Plaintiff can walk for 50 feet "until the pain in his leg gets bad enough that he needs to go down on his knees." Tr. 417. Dr. Falk noted Plaintiff's leg pain frequently causes him to fall and occasionally causes him to trip. According to Dr. Falk, Plaintiff cannot stay in one position for more than ten or fifteen minutes before he has to lean on something, and his carpal-tunnel syndrome causes him to have significant pain if he uses a hammer or screwdriver. Dr. Falk concluded Plaintiff "is physically and emotionally unable to work now or in the foreseeable future." Tr. 417.

The ALJ did not give any weight to Dr. Falk's opinion. The ALJ noted whether "the claimant can work is an administrative finding and an issue reserved to the Commissioner." Tr. 26. This is a clear and convincing reason for the ALJ to reject Dr. Falk's opinion as to Plaintiff's ability to work. *See* 20 C.F.R. § 404.1527(d)("A statement by a medical source that [a

claimant] is . . . unable to work" is "an opinion on issues reserved to the Commissioner," is "not [a] medical opinion," and is not due "any special significance" regardless of the source of the opinion.).

The ALJ, however, also did not give any weight to Dr. Falk's opinion relating to Plaintiff's physical limitations on the ground that the opinion "was simply a recitation of [Plaintiff's] subjective complaints, which are not entirely credible. . . . Dr. Falk . . . did not reference any objective signs or findings in support of [his] opinion." Tr. 26. The Court, however, has concluded the ALJ erred when he found Plaintiff was not credible.

On this record, therefore, the Court also concludes the ALJ erred when he did not give any weight to that portion of Dr. Falk's December 2012 opinion related to Plaintiff's physical limitations because the ALJ did not provide clear and convincing reasons for doing so.

**B.    Dr. Falk's February 2014 opinion**

On February 11, 2014, Dr. Falk completed a Medical Evaluation form in which he noted Plaintiff was able to walk 50 to 200 yards, needed to change positions every 15 or 20 minutes, and required frequent rests throughout the day. Dr. Falk opined Plaintiff could stand and walk less than two hours in an eight-hour work day, could sit for no more than two hours in an eight-

20 - OPINION AND ORDER

hour work day, could occasionally lift up to 20 pounds, and twice per month Plaintiff's impairments would be so severe that he would be unable to maintain a regular work schedule.  Tr. 443-45.

The ALJ gave limited weight to Dr. Falk's February 2014 opinion on the grounds that it was based on Plaintiff's "subjectively reported limitations" and was not supported by the medical record.

As noted, the Court has already concluded the ALJ erred when he found Plaintiff was not credible.  In addition, to support his finding that Dr. Falk's opinion was not supported by the medical record, the ALJ noted "medical records do not show that an examiner observed that [Plaintiff] was uncomfortable sitting or that he was shifting around in his seat or standing up to stretch."  The record, however, reflects during a June 2010 examination that Plaintiff was "unable to remain still for entire exam" due to pain.  Tr. 357.  In addition, the medical record reflects throughout 2011 and 2012 Plaintiff experienced extreme back pain when he was sitting or standing despite medication. *See, e.g.,* Tr. 328, 330, 279, 327, 331, 326, 311, 395, 428, 438.

On this record the Court concludes the ALJ erred when he gave little weight to Dr. Falk's February 2014 opinion because he did not provide clear and convincing reasons based on substantial evidence in the record for doing so.

21 - OPINION AND ORDER

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be

> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has determined the ALJ erred when he improperly did not give any weight to Dr. Falk's December 2012 opinion and gave little weight to Dr. Falk's February 2014 opinion, which, the Court notes, are not contradicted by the opinions of other treating or examining physicians on a fully-developed record. In addition, Dr. Falk opined Plaintiff would not be able to work an eight-hour work day that included only one scheduled afternoon break and that Plaintiff would need to take frequent rests throughout the day. The VE testified an individual who needed to take unscheduled breaks throughout the day would not be able to maintain competitive employment.

After giving Dr. Falk's opinions the weight required by law, the Court concludes Plaintiff cannot work on a regular and continuing basis and, therefore, is disabled. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b)(RFC is ability to work on "regular and continuing basis"). *See also* SSR 96-8p ("regular and continuing basis" is "8 hours a day, for 5 days a week, or an equivalent work schedule"). The Court, therefore, concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000). *See also Reddick*, 157 F.3d

23 - OPINION AND ORDER

at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)(if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

Accordingly, the Court remands this matter for the immediate calculation and award of benefits to Plaintiff.

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 19th day of September, 2016.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

24 - OPINION AND ORDER